**In re Jerry L. HARRELSON and Lorraine H. Harrelson, Debtors.**

**No. 03–9605–3F3.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

April 20, 2004.

Lance P. Cohen, Cohen & Thurston, PA, Jacksonville, FL, for Debtors.

Gordon P. Jones, Jones & McCorkle, Jacksonville, FL, for Trustee.

Raymond R. Magley, Smith, Hulsey & Busey, Jacksonville, FL, for trustee.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon the Trustee's Objection to Debtors' Claim of Exemption and the Trustee's Motion for Turnover of Property. The Court conducted a hearing on February 3, 2004. The Court elected to take the matters under advisement and directed the parties to submit briefs in lieu of oral argument. Upon the evidence and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Debtors filed a Chapter 7 bankruptcy petition on September 19, 2003. On Schedule B of their bankruptcy petition Debtors listed an account with A.G. Edwards valued at $32,000.00. (Trustee's Ex. 1.) On Schedule C of their bankruptcy petition Debtors claimed the A.G. Edwards account as exempt pursuant to Fla. Stat. § 440.22.

On August 17, 2001 Lorraine Harrelson received a $76,120.54 workers' compensation settlement as the result of a work-related injury. (Trustee's Ex. 2.) As part of the settlement, Lorraine Harrelson waived her right to future medical benefits. On that same day Lorraine Harrelson deposited $75,000.00 of the funds into a First Union money market account. (Trustee's Ex. 3.) Debtors used a portion of the money to pay bills. On November 29, 2001 Debtors transferred $54,419.27, the balance of the First Union money market account, into another First Union money market account. (Trustee's Ex. 4.) Debtors continued to use the money to pay bills.

On February 7, 2002 Lorraine Harrelson transferred $40,000.00, the balance of the second First Union Money market account, into a brokerage account with A.G. Edwards. (Trustee's Ex. 6.) The $40,000 was invested as follows: $19,610.25 was used to purchase United States Treasury Bonds with a $25,000.00 face value and $20,562.88 was used to purchase 750.744 shares of the Washington Mutual Investment Fund, Inc., Class C at a price of $27.39 per share. (*Id.*) The value of the A.G. Edwards account is not guaranteed or insured by the federal government or A.G. Edwards and fluctuates based on the performance of the investments in the account. Jerry Harrelson testified that Lorraine Harrelson withdrew the money from the second First Union money market account and invested it in treasury bonds and mutual fund shares because she hoped to earn a higher rate of return than the one percent paid by the money market account. He also testified that the account was set up to fund Lorraine Harrelson's future medical needs.

Since she opened the A.G. Edwards account, Lorraine Harrelson has made the following withdrawals: 1) $3,483.96 on October 10, 2002 (Trustee's Ex. 10.); 2) $3,000.00 on January 24, 2003 (Trustee's Ex. 12.); 3) $800.00 on September 12, 2003 (Trustee's Ex. 15.); and 4) $1,500.00 on September 18, 2003.(*Id.*) The withdrawals were used to pay bills.

On the date of the filing of the petition, Jerry Harrelson was employed as a salesman for Senior Home Care with monthly take home pay of $3,485.36. On their schedules Debtors listed monthly expenses of $3,443.00. Lorraine Harrelson had no income at that time but had a pending claim for social security disability benefits. In January, 2004 Lorraine Harrelson began receiving $584.00 monthly in social security disability benefits.

Lorraine Harrelson is currently covered by health insurance provided by Jerry Harrelson's employer. Lorraine Harrelson's only current medical expense is a prescription for nerve damage for which she pays a $15 monthly co-payment. If Lorraine Harrelson requires surgery, she must pay a $3,000.00 co-payment.

## CONCLUSIONS OF LAW

The Trustee asserts that the treasury bonds and mutual fund shares are not exempt and should be turned over to the Trustee. Debtors claim that they are exempt pursuant to § 440.22 of the Florida Statutes which provides:

*440.22. Assignment and exemption from claims of creditors*

No assignment, release, or commutation of compensation or benefits due or payable under this chapter except as provided by this chapter shall be valid, and such compensation and benefits shall be exempt from all claims of creditors, and from levy, execution and attachments or other remedy for recovery or collection of a debt, which exemption may not be waived. However, the exemption of workers' compensation claims from creditors does not extend to claims based on an award of child support or alimony.

Fla. Stat. Ann. § 440.22 (West 2003).

The seminal case construing § 440.22 is *Broward v. Jacksonville Medical Center*, 690 So.2d 589 (Fla.1997). In that case Jacksonville Medical Center obtained a judgment for unpaid medical bills against Broward. Thereafter, Broward received a lump sum workers' compensation award which he deposited into a savings account. Jacksonville Medical Center attempted to garnish the savings account. Broward claimed that the funds were exempt pursuant to § 440.22. The county court held that the "due or payable" language of the statute limited the exemption to funds not yet received. Because Broward had received the funds, they were no longer "due or payable" and were not exempt. The circuit court affirmed the county court's decision. The First District Court of Appeal denied certiorari but certified the following question to the Florida Supreme Court: "Does the 'due or payable' language of Section 440.22, Florida Statutes, mean that once compensation benefits have been paid to an injured employee or his or her beneficiaries that such benefits are no longer exempt from all claims of creditors?" *Id.*

at 590. Noting that the statute was ambiguous, the court looked to legislative intent. *Id.* at 591. The court stated "the workers' compensation law is designed to protect employees and their dependents against the hardships that arise from an employee's injury or death arising from the course of employment". *Id.* (citations omitted). The Court also pointed out that workers' compensation benefits replace an injured employee's regular source of income while he is unable to work.[1] *Id.* The court held that workers' compensation benefits remain exempt in the hands of the beneficiary. *Id.* Finally, the court suggested that the legislature address issues concerning the length of the exemption and the effect of the conversion of workers' compensation funds into another form such as an automobile or shares of stock. *Id.* at 592. The legislature has not done so.

The Trustee contends that the issue before the Court is whether assets purchased with workers' compensation benefits are exempt, not whether benefits already received are exempt. The Trustee asserts that workers' compensation benefits which are deposited into a bank account retain their character as benefits but argues that once they are used to purchase an asset such as stocks or bonds they lose their character as workers' compensation benefits and instead become the asset purchased. The Court holds that workers' compensation benefits invested in publicly traded securities (i.e. stocks, bonds, and mutual funds) retain their character as workers' compensation benefits "in the hands of the beneficiary" as defined by *Broward* and are thus exempt pursuant to § 440.22 of the Florida Statutes. The Court finds that the treasury bonds and

---

1. Workers' compensation benefits are also intended to compensate an injured worker for medical expenses. *See Weisfeld v. Weisfeld*, 545 So.2d 1341 (Fla.1989).

the mutual fund shares in the instant case are publicly traded securities.

Alternatively, the Trustee argues that allowing the bonds and shares to be exempt is contrary to § 440.22's purpose of ensuring that a beneficiary keeps the benefits needed for his or her support after suffering an injury. First, the Trustee asserts that in contrast to guaranteed funds in a bank account, stocks and bonds can be substantially depleted and unavailable for a debtor's protection. Second, the Trustee asserts that allowing an exemption for assets purchased with workers' compensation benefits creates a disincentive for a beneficiary to use the benefits for his or her support after an injury. The Court finds these arguments unconvincing. While it is true that an individual who invests in treasury bonds or mutual funds risks losing a portion of his investment, the heightened risk is generally offset by a higher rate of return than the rate of return on a savings account.[2] In the case of a workers' compensation beneficiary, a higher rate of return would result in increased protection. Jerry Harrelson testified that Lorraine Harrelson withdrew the money from the second First Union money market account and invested it in treasury bonds and a mutual fund because she hoped to earn a higher rate of return than the one percent paid by the money market account. As to the disincentive argument, the Court expects that a beneficiary's use of workers' compensation proceeds will be influenced more by current and anticipated needs and financial prudence or imprudence rather than the ability to claim the proceeds as exempt. The Trustee presented no evidence that a beneficiary who places his benefits in a savings account is more likely to use them for support than a beneficiary who purchases treasury bonds or mutual fund shares with his benefits.

The Trustee contends that this case is a perfect example of stocks or bonds not replacing a beneficiary's income or being used for support. The Trustee points out that Debtors are relying on Jerry Harrelson's wages and Lorraine Harrelson's disability to pay their ordinary expenses and that Lorraine Harrelson currently has no medical expenses other than a small monthly co-payment. The fact that Debtors do not withdraw money from the A.G. Edwards account on a weekly or even monthly basis in order to pay expenses does not mean that Debtors do not need them for support. As Debtors point out, their track record of continuously diminishing the benefits even after Jerry Harrelson obtained his current employment and even after the A.G. Edwards account was opened leads to the conclusion that Debtors need the funds for their continued support. Additionally, although Lorraine Harrelson has only minimal current medical expenses, her future medical needs are unknown.

Finally, the Trustee contends that courts in Florida recognize that exempt funds invested in a business venture or otherwise placed at risk by the beneficiary are subject to losing their exemption. The Trustee cites *Jensen v. Captive Limousine Service (In re Rajkovic)*, 289 B.R. 197, 201 (Bankr.M.D.Fla.2002 Judge Paskay) for the proposition that exempt funds placed at risk of loss are subject to losing their exemption. In that case the debtor received a $100,000.00 workers' compensation settlement. A month later the debtor transferred approximately $66,000.00 of the funds to a corporation in which he and his wife each owned 30% of the shares and

---

**2.** With respect to treasury bonds, the only potential risk of loss is the sale of the bonds prior to their maturity date. If treasury bonds are held to maturity, the holder is guaranteed to receive the face value of the bonds.

in which each of his four children owned 10% of the shares. The corporation purchased a limousine with the money. Approximately 4 ½ months after the transfer the debtor filed a bankruptcy petition. The debtor did not list the receipt of the settlement on his statement of financial affairs.

The issue before the court was whether the transfer was voidable as a fraudulent transfer pursuant to § 548 of the Bankruptcy Code. The court noted that the funds transferred by the debtor to the corporation were "no longer funds, which could have assisted his rehabilitation and they were not used to save him from financial distress during the term of his disability... To permit [the corporation] to immunize the monies it received would be a perversion of the very purpose of the Statute designed to assist an injured worker to achieve rehabilitation and not to enable a recipient of benefits to utilize the funds it received to invest in business ventures." *Id.* at 201. The court held that the transfer was voidable pursuant to § 548. *Id.*

The Court does not find *Rajkovic* to stand for the proposition that benefits placed at a risk of loss are no longer exempt. Judge Paskay focused on the fact that because the debtor used the funds to invest in a business venture, the funds were no longer available to the debtor to use for the purposes for which they were intended. In the instant case, the funds in the A.G. Edwards account can be, and when necessary have been, liquidated to provide for Debtors' support.

The Trustee also cites *Sullo v. Cinco Star, Inc.*, 755 So.2d 822 (Fla. 5th Dist.Ct. App.2000) for the proposition that exempt funds placed at risk of loss are subject to losing their exemption. However, the issue in *Cinco* was whether a certificate of deposit which was pledged as collateral for a bank loan was exempt from the claim of the bank because it was funded with workers' compensation proceeds. The court noted that *Broward* was not applicable because "the workers' compensation benefits in *Broward* on deposit were sought by a judgment debtor (sic) who had not been specifically granted an interest in the bank account. Here Sullo specifically pledged the proceeds of the settlement after they had been received." *Id.* at 823. Placing workers' compensation proceeds at risk of loss by using them to purchase treasury bonds and shares in a mutual fund and placing them at risk by pledging them as collateral for a loan are not analogous concepts. The Court finds that *Cinco* has no application to the case at hand.

## CONCLUSION

Because they are publicly traded securities, the treasury bonds and mutual fund shares purchased by Lorraine Harrelson with the proceeds of a workers' compensation lump sum settlement retain their character as workers' compensation benefits "in the hands of the beneficiary" as defined by the Florida Supreme Court in *Broward v. Jacksonville Medical Center*, 690 So.2d 589 (Fla.1997) and are therefore exempt pursuant to Fla. Stat. § 440.22. The treasury bonds and mutual fund shares are not required to be turned over to the Trustee. The Court will enter separate orders consistent with these Findings of Fact and Conclusions of Law.

## *ORDER OVERRULING TRUSTEE'S OBJECTION TO DEBTORS' CLAIM OF EXEMPTION IN ASSETS HELD IN A.G. EDWARDS ACCOUNT*

This case came before the Court upon the Trustee's Objection to Debtor's Claim of Exemption of assets held in an account with A.G. Edwards. Upon Findings of

Fact and Conclusions of Law separately entered, it is

**ORDERED:**

The Trustee's Objection to Debtors' Claim of Exemption is overruled and the exemption is allowed.